# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

BROTHERHOOD OF MAINTENANCE    )
OF WAY EMPLOYEES DIVISION OF    )
THE INTERNATIONAL    )
BROTHERHOOD OF TEAMSTERS,    )
    )
    Plaintiff,    )
    )    2:13 CV 18-PPS-APR
    v.    )
    )
INDIANA HARBOR BELT    )
RAILROAD COMPANY,    )
    )
    Defendant.    )

## OPINION AND ORDER

Indiana Harbor Belt Railroad Company asks me to reconsider my ruling partially denying its motion to dismiss. (DE 45) In that ruling, I held that Plaintiff Brotherhood of Maintenance of Way Employees Division of the International Brotherhood of Teamsters had associational standing to pursue injunctive remedies on its claims of racial discrimination and harassment in the workplace against the railroad. (DE 41) After reviewing the parties' extensive briefing and hearing argument regarding this motion, for the reasons below, I now **DENY** Indiana Harbor Belt's Motion for Reconsideration (DE 45).

## BACKGROUND

The facts as alleged in the complaint have already been discussed in detail in my previous order (DE 41), so I'll provide only a short recap here. The Union alleges that its African American members have suffered from various discriminatory practices in

the Indiana Harbor Belt workplace.  For example, the Union alleges that its African American members have not received the same training and employment opportunities as white employees, have been disciplined more harshly than white employees for the same relatively minor infractions, and have had to endure such disturbing incidents as repeated use of the N-word and seeing a noose hanging in a company vehicle.  (*See generally* DE 34)  All of this has created "a hostile work environment of such intensity as to result in their constructive discharge" (*id*. ¶ 13), resulting in a workforce whose racial makeup is disproportionate to the racial composition of the relevant labor market.

The Union's first complaint sought damages and injunctive relief; the Union also sought to certify the case as a class action. (DE 1) Indiana Harbor Belt first moved to dismiss the class allegations and the Union responded by dropping them.  (DE 34) Indiana Harbor Belt then moved to dismiss the amended complaint on the grounds that the Union lacked standing to pursue claims on behalf of its members because it failed the third-prong of the three-part test for associational standing set forth in *Hunt v. Washington*, 432 U.S. 333, 343 (1977) (holding associational standing exists only where an association can show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit"), *superceded by statute on other grounds*. (DE 35-36)  Indiana Harbor Belt told me that the suit would require too much individual participation of the members, as forbidden by *Hunt.*  (*Id*.)  I agreed regarding

the Union's claim for damages, but I allowed the pattern-or-practice claim for injunctive relief to go forward because such a claim would not require a problematic amount of individual participation. (DE 41) Indiana Harbor Belt requests that I reconsider that ruling telling me that the Union does not have standing to pursue pattern-or-practice claims in the absence of class certification. (DE 45)

## DISCUSSION

Motions for reconsideration under Federal Rule of Civil Procedure 59(e) are utilized for a very limited purpose: to correct manifest errors of law or fact, to present newly discovered evidence, or to address an intervening and substantial change in the controlling law since the submission of the issues to the district court. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996); *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). A party moving for reconsideration bears a heavy burden; and for that reason, such motions are rarely granted. *Bank of Waunakee*, 906 F.2d at 1191.

Indiana Harbor Belt claims it was a manifest error of law to allow the Union to pursue a pattern-or-practice claim in the absence of class certification. Title VII authorizes the issuance of an injunction to stem a pattern-or-practice of discrimination. 42 U.S.C. § 2000e-6(a). But according to Indiana Harbor Belt, "all Circuits that have addressed the issue" have held that a plaintiff may not pursue non-class claims under a pattern-or-practice theory. (DE 46 at 1) That's only partially true. What is true is that the vast majority of circuits have held that an *individual* plaintiff cannot pursue a

pattern-or-practice theory for non-class claims.[1]  But as best I can tell, no circuit court

has addressed the precise question with which I am confronted — whether an

association acting as a representative of its members may pursue such claims?  After

evaluating the full body of caselaw that comes at least close to addressing this issue, I

am not convinced that there is any *per se* rule forbidding the Union from pursuing these

claims without class certification.  Therefore, I do not believe I made a manifest error of

law in allowing these claims to move forward.

 At the outset, as I just noted, Indiana Harbor Belt is right that an *individual* can't

pursue pattern-or-practice claims in the absence of class certification.  *See e.g. Davis v.

Coca-Cola Bottling Co.*, 516 F.3d 955, 967 (11th Cir. 2008); *Daniels v. UPS, Inc.*, 701 F.3d

620, 632 (10th Cir. 2012) (noting every circuit that has considered the question of

whether individual plaintiffs can bring pattern-or-practice claims has answered in the

negative). And it's easy to see why: pattern-or-practice claims generally involve claims

of classwide discrimination that a single individual (or small group of individuals)

cannot readily prove.  *Daniels*, 701 F.3d at 633.  Proof of one violation is not proof of a

pattern.

 But that's not the situation before me.  Here, I have a union seeking to enjoin

various discriminatory actions against its members by their employer – something

unions have already been doing for years without first certifying a class.  *See e.g., Retired*

---

[1]  Importantly, the Seventh Circuit has not yet addressed whether an individual can bring a
pattern-or-practice claim, despite Indiana Harbor Belt's claim to the contrary.  At most, it has merely
questioned in a footnote whether allowing such claims by an individual outside of the class context is
proper, without deciding the issue. *See Babrocky v. Jewel Food Co.*, 773 F.2d 857, 866 nn. 6 (7th Cir. 1985).

*Chi. Police Assn. v. City of Chicago*, 7 F.3d 584, 599-602 (7th Cir. 1993) (allowing association to bring § 1983 claims under associational standing without certifying a class); *Local 194, Retail, Wholesale & Dept. Store Union v. Standard Brands, Inc.*, 540 F.2d 864, 866 (7th Cir. 1976) (holding a union is an "aggrieved person" under Title VII and can bring suit on behalf of its members without certifying a class). That's because even though a union plaintiff typically can't meet Rule 23's requirements since "[i]t is not a member of the class of persons whose rights are to be vindicated," *Local 194*, 540 F.2d at 867), it is often the best representative of litigants because it can "draw upon a preexisting reservoir of experience, research, and capital" that can "sharpen the presentation of issues appreciably – one of the primary concerns of the doctrine of standing." *Retired Police*, 7 F.3d at 600. As the Supreme Court put it:

> The only practical judicial policy when people pool their capital, their interests, or their activities under a name and form that will identify collective interests, often is to permit the association or corporation in a single case to vindicate the interests of all. The very forces that cause individuals to band together in an association will thus provide some guarantee that the association will work to promote their interests.

*Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Brock*, 477 U.S. 274, 290 (1986) (allowing a union to challenge an employee benefits policy on behalf of its members without first certifying a class) (citations and quotation marks omitted).

Indiana Harbor Belt says I should treat the union as an individual plaintiff because *Hunt* holds that "an association is treated as an individual plaintiff." (DE 52 at

4) But *Hunt* never makes this leap.  Instead, *Hunt* makes no reference to "individuals" and states only that the first prong of associational standing is that "an association has standing to sue on behalf of its members when . . . its members would otherwise have standing to sue in their own right." *Hunt*, 432 U.S. at 343.  *Hunt* never requires that the members must be able to bring the claims *as individuals*.  Certainly, the members of the union could have brought these claims as a class action. *See e.g. Mozee v. Am. Comm. Marine Service Co.*, 940 F.2d 1036, 1042-44 (7th Cir. 1991) (class of employees alleging pattern-or-practice of racial discrimination based on employer's hiring, promotion, and disciplinary actions, in addition to permitting a sign stating "No Nigger Riggers" to be displayed on company property) *superceded by statute on other grounds*.

It is worth noting at this point that despite Indiana Harbor Belt's claim that it is challenging the Union's standing under only *Hunt*'s third prong – forbidding too much individual participation by members in the litigation – Indiana Harbor Belt repeatedly references the fact that an association can bring only those claims that its members could bring in their own right (*see e.g.* DE 46 at 6; DE 52 at 4), which comes instead from *Hunt's* first prong, referenced above.  *Hunt*, 432 U.S. at 343.  Although Indiana Harbor Belt reiterated during oral argument that it is indeed arguing only that the Union cannot meet the third prong, it appears to conflate these two prongs in its briefing.  To be clear, Indiana Harbor Belt conceded in its motion to dismiss that the Union satisfied *Hunt*'s first two prongs.  (DE 36 at 5) It is too late to argue that those same claims now violate *Hunt*'s first prong in the absence of a change in law or newly discovered facts.  *Caisse*

*Nationale*, 90 F.3d at 1269-70; *Bank of Waunakee*, 906 F.2d at 1191.  Even so, since the Union's members could bring these claims in their own right via a class action, as discussed above, the Union meets *Hunt*'s first prong, as well.

Although the Seventh Circuit has not spoken directly on this issue, *Local 194 v. Standard Brands* does present a similar set of facts that leads me to believe the Union should have standing in this matter.  There, a union sought to represent its members in a Title VII action alleging racially discriminatory hiring and promotion practices by an employer.  *Local 194*, 540 F.2d at 865.  The court held that "a union has standing as an 'aggrieved person' under Title VII to represent members who are victims of discrimination" in part because "the reference to 'aggrieved persons' has been taken to indicate an intent to broaden standing rather than restrict it."  *Id*. at 866.  The court further found that "[p]rivate enforcement suits are an essential means of obtaining judicial enforcement of Title VII and of vindicating the important congressional policy against discriminatory employment practices" and that "[t]he effectiveness of these suits can be increased by allowing unions to place their financial resources and expertise behind the suit."  *Id*. (quotation marks and citation omitted).[2]

In addition, one court within this circuit has allowed a group of private plaintiffs to pursue pattern-or-practice claims without certifying a class.  *Gantchar v. United Airlines, Inc.*, Case No. 93-C-1457, 1995 WL 137053 at *4 (N.D.Ill. Mar. 28, 1995).

---

[2]  Although Indiana Harbor Belt correctly points out that *Local 194* does not explicitly say the plaintiff was pursuing pattern-or-practice claims, given the plaintiff's claims of discrimination in hiring and promotion, I suspect it may have been proceeding on that basis.  Even if not, the case is still highly instructive, particularly in the absence of any on-point cases to the contrary.

Although the *Gantchar* court ultimately dismissed most of the plaintiffs on other jurisdictional grounds, the court found that "[t]he present case is a type of nonclass case where it is probably appropriate to apply pattern or practice rules" because the case involved up to 32 plaintiffs alleging discriminatory hiring practices, as opposed to just one plaintiff or a small group of plaintiffs. *Id.*; *see also Chi. Teachers Union, Local No. 1 v. Bd. of Ed. of the City of Chicago*, 950 F.Supp.2d 984, 991 (N.D.Ill. 2013) (allowing union to pursue pattern-or-practice claims under associational standing alongside three individual plaintiffs who expressed intention to certify a class, but a class was not yet certified).

As was the case in *Local 194*, there is something different about a union pressing these types of claims versus a single private plaintiff or small group of plaintiffs. This is simply not a case of one or a few individuals attempting to extrapolate a pattern of behavior from one or a few isolated experiences as forbidden in the cases cited by Indiana Harbor Belt. Instead, the complaint paints a disturbing picture of systemic discrimination: a work place where African-American employees can't get the training they need to move up, are harshly disciplined for relatively minor infractions, endure frequent racial slurs, and have even seen a noose displayed at their workplace – all of which Indiana Harbor Belt has allegedly turned a blind eye to. If true, this could add up to a pattern of systemwide discrimination.

Thus, given the similarity of these claims to those in *Local 194*, the *Local 194* court's clear intention to broaden rather than restrict the definition of who has standing

to pursue discrimination claims under Title VII, and the complete absence of any on-point authority to the contrary, the Union ought to be allowed to pursue its claims against Indiana Harbor Belt. I do, however, concede that it is a close issue. As I said in my prior order, "the law is a bit murky" in this area. (DE 41 at 9) But just because a matter might be a close call doesn't mean reconsideration is appropriate. Indiana Harbor Belt has to convince me that I committed a "manifest error" and I don't believe that to be the case.

Because I have found that the Union may proceed with its non-class pattern-or-practice claims, I do not need to evaluate whether those claims meet *Hunt*'s third prong – I already explained why that's the case in detail in my previous order. (*See* DE 41) I do, however, feel compelled to note that *Hunt's* third prong is, in any event, prudential — in other words, it's not constitutionally mandated. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 555 (1996). In fact, the Supreme Court has indicated that once you satisfy the first two prongs, you may not even need to satisfy the third. *Id.* at 556. As the Court has noted, "the third prong of the associational standing test is best seen as focusing on these matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." *Id.* Given that, I don't see how allowing a union to represent its members in a discrimination claim against its members' employer would run afoul of this prong since it is certainly more efficient and expedient to have the Union present the full picture in one lawsuit, rather than having these claims spread out amongst

various individual lawsuits.  Overall, since Indiana Harbor Belt has already conceded that the Union meets the first two prongs (DE 36 at 5), "it is difficult to see a constitutional necessity for anything more."

## CONCLUSION

In light of the foregoing, I will **DENY** Indiana Harbor Belt's Motion for Reconsideration (DE 45).

**SO ORDERED.**

ENTERED: October 7, 2014

s/Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT